**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SAMUEL VOSS,

    Plaintiff,

v.

QUICKEN LOANS LLC, et al.,

    Defendants.

Case No. 1:20-cv-756

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Samuel Voss filed a putative class action suit against Defendants Mortgage Electronic Registration Systems Inc. ("MERS") and Quicken Loans, LLC ("Quicken") in state court, alleging that Defendants failed to comply with state law when they did not file an entry of satisfaction of a mortgage on Plaintiff's property within 90 days of the sale of that property. Defendants removed the action to federal court on the basis of diversity jurisdiction. Pending before the Court is Defendants' motion for summary judgment. (Doc. 22; *see also* Docs. 23-24). Plaintiff has filed an opposing memorandum and supporting exhibits, (*see* Docs. 28, 30, 32-34), to which Defendants have filed a reply. (*see* Docs. 35-39). As explained below, this Court lacks subject matter jurisdiction. Therefore, remand to state court is required.

**I.    Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1]The parties have consented to the exercise of plenary jurisdiction by the undersigned magistrate judge. *See* 28 U.S.C. § 636(c).

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The parties do not dispute the material facts relevant to key jurisdictional issues, including the basis for diversity jurisdiction and the standing of Plaintiff to proceed in this Court. Because the undisputed facts demonstrate that subject matter jurisdiction is lacking, the action will be remanded to state court for further proceedings.

**II.     Findings of Fact**

1. On February 5, 2020, Plaintiff Voss purchased a property at 486 Stanley Avenue in Cincinnati, Ohio from Donald Dow, Jr.

2. Prior to the sale, Dow had obtained a loan from Quicken Loans, and executed a mortgage that listed MERS as mortgagee on behalf of Quicken Loans.

3. Dow used the proceeds of the sale of his property to satisfy his obligations to Quicken Loans on February 5, 2020.

4. After Dow satisfied his obligations to Quicken Loans, Quicken Loans prepared a satisfaction of Mr. Dow's mortgage (the "Dow Satisfaction").

5. Quicken Loans sent the Dow Satisfaction to the Recorder's Office for Hamilton County, Ohio by electronic means on May 26, 2020.

6. The Hamilton County Recorder's Office recorded the Satisfaction of Mortgage on May 27, 2020.

7. Under state law, Ohio Rev. Code § 5301.36(B), the satisfaction of a mortgage must be recorded within 90 days of the lien satisfaction, a deadline that expired for the Dow Satisfaction on May 5, 2020.

### III. Analysis

Defendants argue that they are entitled to summary judgment on two grounds: (1) because Plaintiff lacks standing to sue under Article III of the United States Constitution; and (2) because Ohio law would excuse the state law violation based upon the impacts of the COVID-19 pandemic and the order issued by the Governor of Michigan in response to the pandemic. (Doc. 22 at 1). Prior to turning to the grounds advanced by Defendants, the undersigned considers *sua sponte* whether Defendants properly removed this case from state court under diversity jurisdiction. Concluding that diversity jurisdiction is lacking, the Court finds remand to state court to be appropriate for that reason alone.

In addition, however, the Court agrees with Defendants that Plaintiff lacks standing to sue in federal court under Article III. Plaintiff's lack of standing also deprives this Court of jurisdiction and requires remand. Based upon the conclusion that this Court lacks jurisdiction and that remand is required, the Court declines to reach Defendants' second argument, that the COVID-19 pandemic excused Defendants' compliance with Ohio R.C. § 5301.36(B).

### A. The Amount in Controversy for Diversity Jurisdiction

Defendants removed this case from state court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. As the removing party, Defendants bear the burden of showing that jurisdiction exists. "The district courts shall have original jurisdiction of all civil actions

3

where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." *Id*. On the record presented, the complaint clearly alleges that complete diversity exists insofar as the parties are citizens of different states. However, in order for removal to be proper, Defendants also were required to show that the "amount in controversy" exceeds $75,000. The requisite amount-in-controversy is not apparent from the face of the complaint.

It is incumbent upon the district court to raise the question of subject matter jurisdiction *sua sponte* whenever it appears from the pleadings or otherwise that jurisdiction is lacking. *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42 (1908). Not only is a court permitted to raise the issue of its subject matter jurisdiction *sua sponte,* it must do so when a question as to its jurisdiction arises. *Clarke v. Mindis Metals, Inc.,* No. 95–5517, 1996 WL 616677, at *3 (6th Cir.Oct.24, 1996) ("Neither party has raised the jurisdictional issue this case presents, but it is axiomatic that we *must* raise issues of subject-matter jurisdiction *sua sponte"* ) (emphasis added) (citing *Community First Bank v. Nat'l Credit Union Admin.,* 41 F.3d 1050, 1053 (6th Cir.1994)).

The essence of Plaintiff's claim is that Defendants violated a state statute that requires the satisfaction of a mortgage to be filed within 90 days. When a mortgage satisfaction is not timely filed, Ohio R.C. § 5301.36(C) specifically provides for "damages" in the set amount of $250.00 to accrue to "the mortgagor of the unrecorded satisfaction and the current owner of the real property to which the mortgage pertains." Plaintiff seeks statutory damages for himself, and on behalf of a putative class of other Ohio property owners who are entitled to statutory damages under Ohio R.C. § 5301.36(C) based upon

4

the Defendants' failure to file the satisfaction of their liens within the 90-day period.

In order to meet the requirements of diversity jurisdiction for a putative class action,[2] a named plaintiff's individual damage claim must exceed $75,000. *See generally, Siding and Insulation Co., Inc. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 373 (6th Cir. 2014); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611, 2620, 545 U.S. 546, 558 (2005) (holding that § 1367(a) confers supplemental jurisdiction over claims of other class members so long as at least one class representative satisfies the amount-in-controversy requirement and other claims are part of the same Article III case or controversy). Here, Plaintiff seeks damages "in an amount to be determined at trial, including, **but not limited to**, the amount of $250.00 for each violation of R.C. § 5301.36 *et seq*.," injunctive relief "[r]equiring Defendants to comply with R.C. § 5301.36," "costs and expenses of this lawsuit and reasonable attorneys' fees," prejudgment interest, and any other "equitable relief" deemed appropriate. (Complaint at 10-11, emphasis added).

Defendants seize upon the "not limited to" language to argue that Plaintiff *could* be seeking damages in excess of $75,000. They note that in addition to the provision for an automatic sum of $250.00 in statutory damages, § 5301.36 "does not preclude or affect any other legal remedies or damages that may be available." R.C. § 5301.36(C). Defendants reason that this case is analogous to an action to quiet title in which the object of the litigation is the property itself. Therefore, they assert that the entire value of Plaintiff's residential property ($300,000) is "at issue" in this litigation.

---

[2]The Class Action Fairness Act ("CAFA") provides for federal jurisdiction when the aggregate amount of claims exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5), (d)(6). Here, however, Plaintiff alleges that the aggregate amount of claims is less than $5 million. (Complaint at ¶6). Therefore, Defendants rely solely on diversity jurisdiction and not CAFA.

It is true that in cases where the entire property is the object of the litigation, an action to quiet title satisfies the amount-in-controversy requirement if the value of the property at issue exceeds $75,000.

> When construing the amount in controversy requirement of a federal statute limiting the appellate jurisdiction of the federal courts, the Supreme Court once stated that "a suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected." *Smith v. Adams,* 130 U.S. 167, 175…(1889) (construing Act of March 3, 1885, ch. 355, 23 Stat. 443). Thus, the fair market value of [the subject parcel of land] speaks to the amount in controversy, not the damages that Plaintiff has alleged.

*Johnson v. Shank*, 2014 WL 794760, at *5 (S.D. Ohio 2014); *see also* !*McGhee v. Citimortgage, Inc.*, 834 F.Supp.2d 708, 712 (E.D. Mich. 2011) (in a suit to undo a foreclosure sale and quiet title, the property is the object of the litigation and the market value of the foreclosed property is the best measure of the amount in controversy); *Planning and Development Dept. v. Daughters of Union Veterans of Civil War*, 2005 WL 3163393, at *6 (E.D. Mich.2005) (holding that the amount in controversy exceeded $75,000 where plaintiffs alleged ongoing clouds on their title that precluded them from selling a building at market value).

The problem for Defendants in this case is that the analogy does not ring true. Plaintiff's complaint does not allege that there is any continuing "cloud on the title" that he seeks to clear in order to sell or lease the property, or that would make the entire value of the property the "object of suit." Unlike cases in which a plaintiff seeks to cancel a mortgage, avoid foreclosure, or otherwise remove an *ongoing* cloud from a title so that a plaintiff may have full use and enjoyment of his or her property, Plaintiff is not seeking that type of relief. Rather, Plaintiff alleges that Defendants' statutory violation placed only a <u>temporary</u> "cloud on the title of the property." (*See* Complaint at ¶19). It is undisputed

that – assuming any cloud existed[3] – it was ephemeral in nature and evaporated three weeks later when the satisfaction of the lien was recorded.

Plaintiff does not place any monetary value on the temporary "cloud" beyond the $250.00 amount of statutory damages. Not only does Plaintiff not allege that his use and enjoyment of the property was in any way impaired *beyond* the alleged short-lived cloud on his title, but he testified that he was not even aware of that alleged cloud until after it had dissipated. And Defendants have offered undisputed testimony that Plaintiff was wholly unimpaired in his use or enjoyment of the property throughout the brief period during which the alleged cloud remained in place. In the absence of any alleged damages during the three-week period in May of 2020 *beyond* the $250.00 provided for by the Ohio statute, the case appears to have been improvidently removed from state court.[4] Therefore, remand to state court is required.

### B.  Plaintiff Lacks Standing to Proceed in Federal Court

Even if a reviewing court were to find the existence of the requisite amount-in-controversy to establish diversity jurisdiction, the undersigned still would remand this case to state court based upon Plaintiff's lack of standing in federal court. Article III of the United States Constitution limits the power of federal courts to "Cases" and "Controversies." "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case - in other words, standing." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)).

---

[3]Defendants maintain that no cloud existed as a matter of state law. Although this Court is required to draw all reasonable inferences in favor of Plaintiff on summary judgment, the Court finds no need to resolve the issue of whether a cloud did or did not exist under Ohio law during the time period in which the Dow Satisfaction was not yet recorded. The only <u>material</u> fact is that any cloud that may have existed was fully resolved when the Dow Satisfaction was recorded prior to suit being filed. And that fact is undisputed.
[4]The Court considered issuing a "show cause" order to permit Defendants an additional opportunity to justify removal. However, in light of the Court's conclusion that Plaintiff also lacks Article III standing, additional briefing on the amount-in-controversy issue would not alter the result.

In order to prove he has standing, Plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S.Ct. at 2203.

Here, Plaintiff cannot show a "concrete" injury-in-fact because he admits that the only injury he suffered was the transient cloud on his title created by the three-week delay in fling the satisfaction of the lien - a technical or procedural violation of state law that controlling Supreme Court authority confirms is insufficient to convey standing in federal court. "The Supreme Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Ward v. Nat'l Patient Account Servs.*, ___ F.4th ___, 2021 WL 3616067 at *2 (6th Cir. Aug. 16, 2021) (quoting *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016), additional citation omitted).

In *TransUnion*, the Supreme Court elaborated on *Spokeo's* conclusion that a plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right." *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 136 S. Ct. at 341),[5] *TransUnion* emphasizes that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* At issue in *TransUnion* was whether a group of plaintiffs whose credit files contained misleading information that allegedly violated the Fair Credit Reporting Act ("FCRA"), but which information had not been disseminated to any third parties, had standing. The Court answered no.

> The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm. In cases such as these where allegedly inaccurate or misleading information sits in a company

---

[5]*TransUnion* considered the injury resulting from the violation of a federal statute enacted by Congress. The undersigned assumes that *TransUnion* would analyze the violation of a state statute in the same manner.

> database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is.

*Id*., 141 S.Ct. at 2210.

As in *TransUnion*, the failure to timely file the Dow Satisfaction resulted in inaccurate information being maintained in the County's database for 22 days beyond what state law allowed, insofar as the database showed the continuing existence of a mortgage that had been fully satisfied.[6] However, like *TransUnion*, there was no "disclosure" of that inaccurate information to any third parties. No one attempted to sell or lease Plaintiff's property or otherwise had any opportunity to discover the inaccuracy caused by the delay in recording the Dow Satisfaction. For that reason, and because Plaintiff claims no other injury (and indeed was not even aware of the delay until being notified of it by his attorneys after the fact),[7] any "risk of harm" that was present during the excess 22 days that the Dow Satisfaction went unrecorded does not constitute a concrete injury. *See id*. at 2211 ("[T]here is a significant difference between (i) an actual harm that has occurred but is not readily quantifiable, as in cases of libel and slander *per se*, and (ii) a mere risk of future harm."); *Ward*, 2021 WL 3616067 at *3 (holding that a procedural violation of the FDCPA did not suffice to establish a concrete injury because "the mere failure to provide certain information does not mirror an intentional intrusion into the private affairs of another").

Because Plaintiff was neither aware of the alleged risk of harm during the 22 days that it occurred, nor suffered any actual harm through disclosure of the inaccurate

---

[6] The fact that Ohio allows a full 90 days for a satisfaction of a lien to be recorded confirms the lack of any statutory injury caused by the mere presence of "inaccurate" information (*i.e.*, the alleged "cloud") for the first 90 days after a mortgage has been satisfied but not yet recorded.
[7] (*See* Voss Deposition, Doc. 24-8 at 38-41, PageID 628-631).

9

mortgage information, he lacks standing to proceed in this Court. *Accord TransUnion*, 141 S.Ct. at 2212; *id*. at 2207, n.3 ("[U]nder Article III and this Court's precedents, Congress may not authorize plaintiffs who have not suffered concrete harms to sue in federal court simply to enforce general compliance with regulatory law."). Following *TransUnion*, the Sixth Circuit similarly has held that a plaintiff does not have standing where he cannot show that the "risk" encompassed by a statutory violation has actually materialized. *See, e.g., Thomas v. TOMS King (Ohio), LLC*, 997 F.3d 629, 642-3 (6th Cir. 2021) (holding that plaintiff failed to show printing of additional digits on a credit card receipt caused actual harm or a risk of harm sufficient to confer standing); *Beaudry v. TeleCheck Services, Inc.*, 854 Fed. Appx. 44 (6th Cir. July 27, 2021) (holding that a request for statutory damages cannot redress a "**risk of future harm, standing alone**," and that the plaintiff lacked standing because she had no evidence that the cited risk ever materialized) (quoting *TransUnion* at 2210-11, emphasis original); *Ward*, 2021 WL 3616067 at *4.

Although the undersigned believes *TransUnion* and recent Sixth Circuit case law to be dispositive, the parties direct this Court's attention to cases outside the Sixth Circuit that have analyzed standing issues in the context of similar state lien satisfaction statutes. In particular, the Eleventh and Second Circuits both issued pre-*TransUnion* opinions that discuss a New York lien release statute, but that reached divergent results. Defendants rely upon the Second Circuit's decision in *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016), in which that court affirmed the dismissal of a lawsuit alleging a violation of the New York statute where - like here - the plaintiff had not alleged "that he or anyone else was aware that the [satisfaction] had not been recorded during the relevant time period." *Nicklaw* holds that "the requirement of concreteness under Article III is not

satisfied every time a statute creates a legal obligation," but only if a plaintiff has "suffer[ed] some harm or risk of harm from the statutory violation." *Id.* The Sixth Circuit previously described the reasoning of *Nicklaw* as "persuasive." *See Lyshe v. Levy*, 854 F.3d 855, 859-60 (6th Cir. 2017) ("a statutory violation in and of itself is insufficient to establish standing"). This Court also finds *Nicklaw* to be persuasive because it is consistent with *Spokeo* and *TransUnion.*

In accepting *Nicklaw,* the undersigned necessarily rejects the reasoning of the Second Circuit in *Maddox v. Bank of New York Mellon Trust Company, N.A.*, 997 F.3d 436 (2d Cir. 2021). Decided a mere month prior to *TransUnion*, *Maddox* created a circuit split by holding that the statutory violation of the same New York mortgage release law was sufficient, <u>standing alone</u>, to support Article III standing. "The mortgage satisfaction-recording statutes create a substantive right, the violation of which produces a concrete, intangible harm." *Id.*, 997 F.3d at 446; *accord Villanueva v. Wells Fargo Bank, N.A.*, 2017 WL 11539677, at *2 (S.D.N.Y. Jan. 25, 2017) (concluding that *Nicklaw* was incorrectly decided based upon the "risk" of harm apparent from New York statute despite the fact that no one was aware of the delay until after the fact); *Weldon v. MTAG Servs., LLC*, 2017 WL 776648 at **5-7 (D. Conn. Feb. 28, 2017) (holding, despite *Nicklaw*, that plaintiff had alleged an Article III injury because the alleged failure to release liens posed "a risk of real harm to the interest in clear title" that Connecticut statute was "designed to protect.").

The differing opinions of the referenced cases might have presented a closer issue prior to *TransUnion.* However, at this point in time, *Maddox* can no longer be reconciled

11

with controlling Supreme court authority.[8] Additionally, regardless of what the New York legislature may have intended, an examination of case law confirms that the Ohio legislature intended the $250.00 damage figure to serve as a statutory penalty for a procedural violation. The statute does preserve "legal remedies or damages that *may* be available." Ohio R.C. §5301.36(C). (emphasis added). But case law suggests that other damages are only available if an actual, concrete injury has occurred and a plaintiff's substantive rights have been impacted, such as an adverse impact on the sale or lease of a property, or an adverse impact on a mortgagee's credit rating. *See Radatz v. FNMA*, 50 N.E.3d 527, 535, 145 Ohio St.3d at 483, 2016-Ohio-1137, ¶ 28 (Ohio 2016) (holding that "[i]f a borrower suffers actual harm resulting from a mortgage-recording error or delay - for example, a cloud on title that disrupts or prevents the disposition of encumbered property - R.C. 5301.36(C) allows the borrower to pursue a claim for damages" in addition to the statutory penalty).[9]

Plaintiff argues that the statute itself confirms that his injury was sufficiently "concrete" because it defines the $250.00 to which he is entitled as "damages." And indeed, for the limited purpose of determining the applicable state statute of limitations, a majority of the Ohio Supreme Court found the Ohio legislature's statutory use of the term "damages" to be dispositive. See *Rosette v. Countrywide Home Loans, Inc.*, 825 N.E.2d 599, 602, 105 Ohio St.3d 296, 299, 2005-Ohio-1736, ¶ 16 (Ohio 2005).[10] However, Article

---

[8] Defendants argue that *Maddox* and other cases cited by Plaintiff are distinguishable on their facts. The Court agrees that there are significant factual differences but finds it unnecessary to review them in light of the binding authority of *TransUnion*.

[9] The language of *Radatz* assumes that it would be the borrower, as holder of the satisfied but unrecorded mortgage, rather than the purchaser of the property (Plaintiff Voss) who would have a cause of action for additional damages. However, its "actual harm" reasoning could be extended to Plaintiff here if Plaintiff had been prevented from using or disposing of his property.

[10] Three justices dissented from the majority holding in *Rosette*. In a published decision, another federal court recently expressed "doubts about the continuing viability of *Rosette*." *Brack v. Budish*, ___F. Supp.3d ___, 2021 WL 1960330, at *4 (N.D. Ohio May 17, 2021). To the extent *Rosette* remains good law, it is not dispositive of the federal issue at hand.

12

III standing is a federal concept that must be determined under federal law. Notably, when asked to review the same statute under *federal law*, the Ohio Supreme Court clearly held that the $250.00 amount of "damages" specified by R.C. § 5301.36(C) constitutes a "penalty" as opposed to any type of actual damages. *Radatz*, 50 N.E.3d at 535-536, 145 Ohio St.3d at 483 (distinguishing *Rosette* because a "completely different test" applies to the determination of a penalty under federal law). Because Plaintiff here seeks recovery of what amounts to a penalty for a procedural violation of an Ohio statute, he does not have standing under Article III to sue in federal court.

Defendants seek judgment in their favor on the basis of Plaintiff's lack of Article III standing, urging this Court to find that an Ohio court would rule similarly under the different standing analysis that would apply in state court. But Article III standing is a federal concept that does not apply to actions brought in state court. *See Phillips Petroleum Co. v. Shutts*, 105 S.Ct. 2965, 2970, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court."); *Whitsette v. Marc Jacobs International, LLC*, 2018 WL 4002606, at *2 (N.D. Ohio Aug. 22, 2018) ("This Court's authority to grant relief consistent with Article III is a distinct issue from the Plaintiff's right to bring suit under state law.")

A state court is best suited to address whether Plaintiff has standing under Ohio law.[11] And because Defendants improperly removed Plaintiff's case from state court to this Court, remand rather than dismissal is the only appropriate remedy. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") This Court lacks discretion to

---

[11]The Ohio Supreme Court has held that its legislature can confer standing to sue under a statute. *See generally*, *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St. 3d 520, 13 N.E.3d 1101 (Ohio 2014).

13

do otherwise. "[I]n a removed action, upon determination that a federal court lacks jurisdiction, remand to state court is mandatory." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 496-97 (6th Cir. 1999).

### IV.     Conclusion and Order

As this Court is without subject matter jurisdiction and Plaintiff lacks Article III standing to proceed in federal court, this case is hereby **REMANDED** to the Hamilton Court of Common Pleas for further proceedings. Defendants' motion for summary judgment (Doc. 22) and Plaintiff's motion to file a sur-reply (Doc. 41) are hereby **DENIED** as moot.[12]

**IT IS SO ORDERED.**

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[12] Plaintiff's motion to Certify Class and to Appoint Class Representative and Class Counsel (Doc. 21) remains pending for determination by the Hamilton County Court of Common Pleas.